Good morning, your honors. My name is Kim Tran, appearing on behalf of Officer Keith Swank on this appeal. Seated with me at council table is Lisa Marchese. I would like to reserve two minutes of my time for rebuttal. Good point. Seattle Police Officer Keith Swank is entitled to qualified immunity in this matter. He satisfies the first prong of the qualified immunity analysis because his conduct did not violate a clearly established constitutional right. We'll talk a little bit about the elements of obstruction that are clear in this case. There are two ways in which Ms. Hedera, who is the plaintiff in this matter, violated the obstruction statute. The first is that she hindered and delayed Officer Swank's investigation by disobeying his order to stop. It's not disputed. The district court found that, and it's not disputed that those are the facts. This is a municipal ordinance, right? Yes, it is. Does it require, you know, intent on the part of the defendant, the charged person? It does require intent, but to find a probable cause, Officer Swank does not have to establish that there is intent. He has to have a reasonable belief that her conduct evidenced an intent to delay his, obstruct his investigation, and that's exactly what happened here to happen in this incident. Officer Swank responded to a call of stolen checks at the Money Mart or Check Mart, a local check cashing establishment. When he arrived there, he spoke with a customer who said that the Check Mart had stolen his checks. He then went to speak with an employee of the Check Mart and asked simply, let me examine those checks. Don't you think right off the bat in that kind of situation, it would appear to a reasonable police officer that this is a civil dispute? At that point, he didn't know. At that point, without ---- No, but he's going to a check cashing establishment that has a check that somebody presented. It's obviously a civil dispute, isn't it? That's what a reasonable reaction is. That would not at this point ---- Officer Swank did not have the opportunity to make that dispute. He interfered with that dispute by, you know, by voiding the check cashing establishment's possessory lien by giving the check back to the person who presented it, right? Unfortunately, in this incident, Officer Swank didn't have an opportunity to determine what the nature of the dispute was. And in fact, the plaintiff has admitted that the amount of the checks, she didn't ---- The only thing that Officer Swank has an obligation to verify a citizen's complaint, and that's what he had at that point, a complaint of stolen checks. And the plaintiff has ---- Ms. Hedera has confirmed, admitted that she ---- the checkmark was not entitled to the entire amount of those checks. And in fact, there was some money in possession of Money Mart that belonged to the customer. But the key here is that Officer Swank was never given the opportunity to determine what the dispute was. And in the first instance, she refused to allow him to even examine the checks. At this point, he doesn't know if she's going to destroy the checks, if she's going to go talk to her supervisor who will tell her to somehow alter the checks, because he has not had an opportunity to examine the checks. And then when ---- copies of the check, and then he handcuffs her and takes her to jail. He wasn't allowed to photocopy the checks until after he arrested her for obstruction. I understand. But up until the time of the obstruction, he was not allowed to even examine the checks. And then even after that, Ms. Hedera tried to leave the area and go into a secured area where she believed Officer Swank could not go. Well, now, I haven't read the record, just the briefs. But it seemed to me like they were two pretty different stories about what happened at that stage. And if there is, and it's important, you've got a fact issue and we don't have jurisdiction. I would respectfully disagree with that. The issues are whether or not what Ms. Hedera's intent was. And those are the ---- that's how the plaintiff has tried to create an issue of fact. But if you look at the conduct, which is not disputed by the plaintiff, not disputed by the district court, the conduct. Officer Swank is not a minor. He does not know what her actual intent is. What he does have the opportunity to do is to observe her conduct. Everything about her ---- I thought, as Judge Riebley said, at that point in the scenario, there is a dispute about what happened. And she says, she didn't hear him say stop, I believe. Even if that is the case. No, let's not, for purposes under Saussure, we have to take that, we have to take her version of the story. And we'll take that version. She's still obstructed by not allowing him to examine the checks. There are two ways under the obstruction statute. One is to hinder or delay by failing to disobey an officer's instruction to stop. And then the other is to alter or conceal property that the individual knows the officer is attempting to obtain in the course of his investigation. And that is what she ---- At what point in this scenario did she, did he actually arrest her? She had, she retreated behind a back wall, supposedly to contact her supervisor. And he went right behind her car? No. He stayed out, didn't go behind the wall, heard her say, I'm not coming out, is he gone yet? When she came back, he said again, let me examine the checks. She said no. And he, she said, give me your name and badge number. Did she, did she raise any kind of a, a call, you know, reasonable suspicion requirement under the Fourth Amendment? In other words, is that not an issue here? Only as it pertains to the false arrest. So the issue is whether or not Officer Swain could reasonably believe he had probable cause to arrest her for obstruction. Well, he's got to have, he's got to have, I mean, reasonable suspicion even to demand a check, doesn't he? I mean, I can't walk up to you and say I'm investigating a crime. Let me see your purse. Absolutely. He has an obligation to verify the citizen's complaint. That's not an issue in this case? I mean, is that raised? In other words, that he didn't have, he didn't have any cause to, you know, to require the check to be turned over? That isn't an issue. Their argument is that she had a right to speak to her supervisor before giving the checks or allowing the officer to examine the checks. Now, doesn't that go to her intent if intent is required by the, by the ordinance? It doesn't because he is allowed to, to examine her conduct. And she doesn't know what her actual intent is. Well, her conduct is I've got to show it to my, this is company policy, so I've got to get, you know, show it to my supervisor before I can show it to you. That's the motive and that's the conduct. And her conduct actually belies what she says is her actual intent. If it's truly her intent to go to her supervisor and ask for permission, why isn't it that she didn't allow the officer to hold the checks, say, Officer, here's the checks. I need to, before you leave, let me talk to you. Let me suspect that he would do what he did, namely give it, give it back to the customer. That's why. Which he had no right to do, did he? I mean, he's not that judge in the civil court saying, all right, it's my ruling that the customer is entitled to have the check back. And there's also. That's what he did. And that was her suspicion. She was right. There's also Washington law that says in a civil dispute, an officer, to keep the peace, can they order the exchange of property? There's no question about keeping the peace here. There was no incipient riot or fight or anything like that, is there? In the case that I'm referring to, there were angry, there was angry, there was argument between the two parties. And that's what happened here. There was definitely argument between Mr. Pestel, the customer, and Ms. Hedera. I'd like to. If there are no further questions, I'd like to reserve the remainder of my time for rebuttal. Thank you.  Thank you. Good morning, Your Honor. This is Mark Koontz representing Ms. Hedera. And Your Honor was correct that the intent is necessary under the obstruction municipal code. And it's important to look at the facts. And again, the Court is correct that the facts, even in a qualified immunity case, are to be taken in the light most favorable. You take the plaintiff's version. Exactly. And here we have Ms. Hedera, who came to Officer Swank and Mr. Pestel in an attempt to try to resolve this matter. It's not like Officer Swank came in here and she was resisting and backing up. I don't want to talk to her. She offered her services in an attempt to resolve this matter. Then she informed Officer Swank of this scooping policy that the Money Mart had. And this is a very important issue, because Officer Swank made no attempt to find out further information on this scooping policy and didn't ask to see the contract with Mr. Pestel. And even if he did have a right to ask for those items, and I agree with the Court's skepticism in whether a reasonable officer would want to see the checks, you know, or demand the checks right at the outset of this incident. But even so, the checks, the actual checks, aren't the issue here. The issue is whether or not the Money Mart had a right to scoop the checks according to their policy. No, I don't know if that's the issue before the officer, is it? I mean, I mean, I think your point is correct, at least to this extent. We have to look at the objective factors, you know, that were before the officer at the time of the conduct. So they get a call of Pestel. He goes to the to this store, right? And he does nothing about the policy. As far as I'm concerned, it's not his job to decide whether that is a valid policy. So he's only looking at the job he's given, which is to investigate the charge of theft, right? Correct. And in doing so, Ms. Hedera, again, comes to the scene to assist. She, first of all, she does not have the checks in her possession. It's a co-employee who has the checks. She talked to her boss, Mr. Anderson. She doesn't have the checks? Correct. They're in the possession of a co-employee. She is the manager, actually the acting manager. She was an assistant manager, acting as manager during this time. And her supervisor is off-site. And just minutes before the officer arrived, the co-employee came to Ms. Hedera with Mr. Pestel's checks and asked, what do we do? Ms. Hedera called her supervisor. Her supervisor said, by no means do you give back the checks. Our policy is that we scoop the checks. So with this information, she comes to Officer Swank. Again, she comes to him to assist him in resolving this matter. She informs him of the scooping policy. And then she's – and Officer Swank doesn't want to – They're not giving him a copy or letting him see the checks. Well, as soon as Officer Swank wants a copy, she says, let me go call my manager. And she's trying to resolve the issue. And that's the important thing, because in order for there to be probable cause, he has to show that there was intent to hinder or delay. It's quite the contrary. She's trying to assist in resolving this matter by contacting her manager. And, in fact, she says, let me contact my manager and I'll give the checks back to you. That's what she said. Let me contact the manager and I'll give the checks back to you. Her manager had just minutes before told – She said she was going to talk to the manager and give the check itself to the officer? Correct. Correct. That's her testimony. That's correct. And, again, we have to take that as fact. It was – I believe it was in her deposition. It's ER 124, page 60. It was a deposition, page 61, lines 5 through 7. This is going to give the checks back. So that was her intent at that time. Officer Swank knew that. And so at that point, he had no probable cause to arrest her for obstructing. Well, what about the other – you know, the other part of the statute which says something like, you know, you hinder or delay by disobeying in order to stop or stay put or something like that? Well, again, it's – She walked to the back of the store, right? And I think it's pretty clear she was trying to get away from him because she wanted to go back to the secure area. And she said stuff like, well, is he gone and stuff like that, right? She was going back to the secure area to contact Mr. Anderson. Well, on that one, I think her – I don't know if her purpose matters. The issue is the officer said, stay here, and she didn't stay there. I think the Court pointed out that the record shows that Ms. Hedera may not have heard the officer and that she – again, she is trying to assist. What do you mean, the record? You mean it held what she testified to? I believe that's correct. She denied it being told to stop. Correct. Correct. And so, again, we take the facts. Take her version. Correct. We take her version of the facts. Qualified immunity. Correct. And then when she gets back to the secure area, Officer Swank comes through the secure area, which was – and other co-employees had told him not to do that. And then as soon as – as soon as Ms. Hedera realized that – and, again, this is after very rude and unprofessional conduct that Officer Swank had – had shown Ms. Hedera at the scene. She said, you know, I'm going to get his name and badge number because this – his conduct is improper. And it's at that point that Officer Swank makes the arrest. I think that's a very important fact because it's clear just looking at it that he could have arrested her before. He didn't. It was only after she asked for his name and badge number that – that he was – that she was arrested. And that clearly goes to a retaliation. Now, the district court said, well, Officer clearly can't arrest somebody for retaliation, right? That was the basis of the denial of the qualified immunity, but didn't cite any cases in support of that. Do you know of any case that supports that proposition? I – let me – there is the – there's the Knox v. Southwest case, Southwest Airlines, 124, Feb. 3, 1103, which is cited in my brief on page 10. And that – that talks about that. And that mostly has to do with – it's, again, it's a similar case to this where there was no criminal intent on the part of the arrestee. And that was done, the Court thought, for a retaliation. And I don't think it's the retaliation that is as important as the fact that there was no criminal intent to provide a probable cause for the arrest to begin with. Ms. Hedera was – was merely trying to assist Officer Swank in resolving this matter, and instead she ends up getting arrested. If there are no further questions, I'll conclude my presentation. Okay. Thank you. Thank you, Your Honors. Okay. Reba? Thank you, Your Honor. I'd like to direct the Court's attention to ER-59, which is a deposition of Ms. Hedera in which she testifies that she would listen to her manager before listening to a Seattle police officer, which belies Plaintiff's conduct that she was intending to give the checks over and cooperating with the officer. I'd also like to draw the Court's attention to the facts on the record that the amounts That have to do with the facts that we have to take in – that we take as true for purposes of determining qualified immunity at the time of the incident. Plaintiff's – indicated on the record that there was something on the record in which Ms. Hedera said that she would – was merely trying to comply with the officer and the facts belie that statement and are not supported by the record. Also, the importance of allowing Officer Swank to examine the checks, if, in fact, there was the scooping policy, he needed to look at the checks to determine the amount of the checks, also to determine whether or not they were entitled to the entire amount of the checks. I'd also like to refer the Court's – What do you mean? No, they never made – they never made that claim, that we're entitled to the entire amount. They, meaning the store, right? No, there – The reason for the dispute, as I understand it, was he brought in the check and they claim, well, you know, under the scooping policy, they were going to deduct something before they gave him the rest. And he says, no, then give me the check back. I'm not going to let you enforce your scooping policy. That's what he says. So there were never – there was – I don't think there's any evidence they intended to keep the whole thing. But they had the whole thing, and they didn't give the change back to the customer. And that was part of his complaint. It's only because the customer, you know, wouldn't accept less than 100 percent. And that was – that is at ER-54. ER-54? In that – in which the amount of the checks was clearly more than what was owed to the checkmark. And I'd also like to direct this Court's attention to the district court's ruling that this – that there was some retaliatory motive here. Even if we do take the factual discrepancies in favor of the plaintiff, it doesn't erase all of the conduct that happens before she asks for the name and badge number. And I would ask also – Is it a reasonable inference that he might have retaliated against her? And this is what – Once she said, give me your name and badge number so I can report you to the – You know, and I think that is a very dangerous proposition, because any citizen at that point who's facing arrest, all they would have to say is give me your name and badge number before they're arrested, and it would thwart the purposes of qualified immunity. This case would be different if Hedera – Ms. Hedera had come out and said, here are the checks. Now, may I have your name and badge number? If that were the case, it would be more on line with Knox, because in Knox, the individual was actually at some point complying with the police officer's instruction to leave. In this case, at no point did Ms. Hedera allow the officer to examine the checks, and he had reasonable belief – even if it was wrong, he had a reasonable belief to believe that he was – she was obstructing his investigation. I would ask that this Court reverse the district court and grant qualified immunity to Officer Swank. Thank you. Okay, Ms. Tran. Thank you. Thank you, Mr. Koontz. This case is submitted for decision. The panel will now stand in adjournment for the day and for the week.
judges: Reavley , Tashima, Paez